Number 18-1597, InVue Security Products, Inc. v. Mobile Tech, Inc. Mr. Harbin. Your Honor, we have already really addressed the issues that I was going to argue on this patent, so unless Your Honor has any questions, I'm content to rest on the briefs because we have already covered it. Thank you. Mr. Blum. May it please the Court. Claims 1 and 6 of the 846 patent are anticipated by Denison. InVue only had two arguments in its briefs to the contrary. One regarded mixing of embodiments in Denison, and the second regards an alleged order of steps. As to the first issue, they claim that the Board somehow improperly combined embodiments in Denison, and that argument is barred by collateral estoppel. What if we don't agree with you on that? Say we don't agree with you that collateral estoppel applies. How do you address the merits of that? So on the merits, the Board was also correct. So it's InVue's argument that Denison somehow discloses two separate embodiments, what it calls the open door and the closed door embodiments, and the Board found that what Denison actually discloses in paragraph 6 is a single lock that can be programmed in multiple ways. It can be programmed with a key, and it can also be programmed with an external computing device. And paragraph 6 explicitly states, while referring to the present invention, that the electronic lock can learn a key code from a corresponding electronic key, a handheld program unit, and or an external computing device. So that's one lock that can learn the code from a key, which is what InVue refers to as the open door embodiment. Does Denison teach that the key itself can be programmed? Because I think that's required by the claim as well. Yes, so within the disclosures. Is that paragraph 85? Yeah, around paragraph 85 and 87, it discloses that the key can be programmed by the external computing device. The external computing device can randomly generate a number and then provide that to the key. Okay. And then I guess the key then can be used to program the lock? Yes, according to paragraph 6, paragraph 6 discloses that the lock can learn the code from the key. And this interpretation of the board was based upon substantial evidence. It was based upon paragraph 6 and is also supported by the testimony of MTI's expert, Dan Allison. This is what the reference teaches is an issue of fact. And we believe the board decision was based upon substantial evidence here. Is it your position that even if there was some order, specified order required by the claim, that the prior teaches it nonetheless? Correct, because what Denison discloses is that you unlock a vending machine using a key, and that happens when the codes match. When the code and the key matches the code in the vending machine. Well, the code in the vending machine, there can't be a matching until the vending machine actually has a code to be matched. And so Denison teaches that code can come from the key. Well, in order for the code, in order for the key to give the code to the vending machine, the key itself has to first have a code. And Denison teaches that code can come from an external computing device. In fact, Denison only discloses two possible ways that the key can receive the code. It teaches that the code can come from a external computing device. And then in embodiment, it teaches that it can come from a factory. So where there's only two different possibilities, it's obvious under KSR to try either of those two different possibilities. And where it comes. You're turning to your obvious misdetermination. Correct. Okay, got it. And where it comes from the external computing device, all the limitations of the claims are met, including any type of order of steps, if that was improperly read into a system claim. And even where it's programmed at a factory, the claims would still be obvious. Denison doesn't disclose how the factory actually programs the code into the key. But Inview's expert in cross-examination agreed that it would be obvious for a laptop to program the code into the key at the factory, and a laptop would be a programming station. So regardless of how you look at these claims, they're either anticipated or obvious. And even if paragraph six doesn't link the two different embodiments together as the board found, it would have been obvious to combine them. There's been a number of cases from the federal circuit that's found it obvious to combine embodiments that are adjacent to each other, such as the Boston Scientific v. Cordis case. And the board here, as an issue of fact, found there was substantial evidence that there was a motivation to combine the embodiments. It relied upon Mr. Allison. He relied upon not only the disclosure of paragraph six, but also that combining those embodiments provides extra flexibility for an end user. You then have one lock that can be programmed three different ways. There's no technical or logical reason to instead manufacture three vending machines that are each programmed in only one way, as opposed to just having one vending machine that can be programmed in three ways, and then end users can use it in whatever way fits their needs. Back to the order of steps issue, though. We believe the board did properly construe the claims. Under Inview's argument, there would be method limitations in a system claim. We believe that's improper. The board correctly construed the claims under mastermind. Here, the claims talk about a security device being initially programmed with a code from a key. And so under the mastermind case, that should be construed as a security device that's capable of being programmed by the key, which Denison discloses. Okay. Anything else? No, Your Honor. That's okay. Thank you very much. Mr. Harmon, do we have anything more? Again, unless Your Honor has any questions, I will come to the rest of my pleadings on their briefs. Okay. Thank you. Thank you all, counsel. The three Inview cases are submitted.